# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LINDA KAY ANDERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-19-01-RAW-SPS |
| ) | |
| **COMMISSIONER of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Linda Kay Anderson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was sixty-two years old at the time of the most recent administrative hearing (Tr. 459). She earned her GED, and has worked as a radio dispatcher, collection clerk, bartender, and correction officer (Tr. 23-24, 167). The claimant alleges she has been unable to work since November 21, 2013, due to diabetes, high blood pressure, chronic obstructive pulmonary disease (COPD), scarring on her heart, and many other medical problems (Tr. 167).

## Procedural History

On November 21, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 6, 2015 (Tr. 14-24). The Appeals Council denied review, but this Court reversed the decision in Case No. CIV-16-61-SPS with instructions on remand to properly consider all the evidence related to the claimant's impairments, particularly the evidence related to her mental impairments (Tr. 483-495). On remand, ALJ Gabbard held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated September 6, 2018 (Tr. 396-416). The Appeals Council again denied remand, so ALJ Gabbard's September 2018 opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ again made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could only occasionally climb ramps/stairs, kneel, crouch, and crawl, never climbs ladders/ropes/scaffolds, and only frequently balance and stoop. Additionally, he found that she should not be required to do any overhead reaching with her right dominant arm, and that she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants (Tr. 406). Based on this RFC assessment, the ALJ again concluded that the claimant could return to her past relevant work as a collection clerk (Tr. 415-416).

**Review**

The claimant contends that the ALJ erred by improperly determining she could return to her past relevant work as a collection clerk. As part of this argument, the claimant asserts that the ALJ failed to properly account for her nonsevere mental impairment in formulating her RFC, which affects her ability to perform her past relevant work. The Court agrees that the ALJ failed to properly assess the claimant's RFC at step four, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of chronic pain, mild degenerative joint disease of the left knee, status post right shoulder hemi arthroplasty, diabetes mellitus with neuropathy, emphysema, long nodules, and COPD, as well as, *inter alia*, the medically determinable impairments of anxiety and depression (Tr. 399-403). The record reflects that the claimant was largely treated at the Mercy Clinic in McAlester,

Oklahoma, by Dr. Lewis (Tr. 245-279, 303-325, 331-340, 351-356, 375-392). Treatment notes mostly reflect recitation of the claimant's medications, and indications regarding prescription refills, but also contain references to the claimant's leg pain and swelling (Tr. 274, 333, 352, 390), as well as her depression and anxiety (Tr. 333, 352, 353).

The relevant record with regard to the claimant's mental impairments is as follows. On April 23, 2014, Dr. Lewis completed a number of forms related to the claimant's mental and physical RFC (Tr. 343-350). As relevant to this appeal, Dr. Lewis indicated that the claimant would be absent from work more than four days per month due to her impairments (Tr. 343, 349). He also noted that she had impairments that would impose non-exertional impairments on her, due to COPD and chronic back pain (Tr. 344). He indicated that her level of pain would affect her ability to work, and that her chronic back and neck pain were consistent with the pain she experienced (Tr. 345). On a Physical RFC Questionnaire, Dr. Lewis indicated that the claimant's diagnoses included diabetes mellitus II, hypertension, back and neck pain, and depression (Tr. 346). He indicated that the claimant's depression contributed to the severity of her physical impairments, and that the claimant's experience of pain was severe enough to frequently interfere with her attention and concentration (Tr. 347). He found, *inter alia*, that she was incapable of even low stress jobs (Tr. 347-348).

On April 21, 2017, Dr. Lewis completed another series of forms related to the claimant's RFC. As to her mental impairments, he indicated that she could not understand, remember, and carry out simple instructions in a routine work setting, make simple work-related decisions in a routine work setting (though she used to be able to), respond

appropriately to supervision or work situations, and was unable to deal with changes. Additionally, he indicated she could not maintain concentration and attention for extended periods or handle normal work stress, and that her impairments would cause her to take unscheduled work breaks, and she could not attend employment on a sustained work basis (Tr. 1240). He cited stress, panic attacks, and depression, in addition to increased pain that affected her ability to work (Tr. 1240). He stated that the claimant's depression and anxiety affected her physically, and that pain would frequently interfere with her ability to attend and concentrate. He indicated that she was capable of low stress jobs (Tr. 1243). Nevertheless, he indicated that she would be absent three or more days per month, citing her physical impairments but also panic attacks and depression (Tr. 1249).

On remand, the ALJ sent the claimant out for a mental status examination with Dr. Kathleen Ward. The claimant had logical and organized thought processes, and was oriented to time, date, and place (Tr. 945). She reported a mood of five out of ten, and described herself as nervous and scared (Tr. 945). She was estimated to have average intellectual abilities and no significant deficits in social judgment and problem solving (Tr. 945). Noting the claimant's reported history of parental violence in childhood, Dr. Ward recommended trauma recovery orientation in talk therapy (Tr. 946). She assessed the claimant with major depressive disorder, recurrent, as well as panic disorder and generalized anxiety disorder v. adjustment disorder with anxiety (Tr. 946).

On July 3, 2018, Dr. Carol Gambrill completed an additional series of forms regarding the claimant's impairments. She estimated the claimant would miss two days of work per month due to anxiety, difficulty concentrating, high/low blood sugars, and pain

-6-

from neuropathy, but on a different form indicated the claimant would miss four days of work per month (Tr. 1491, 1498).  In contrast to Dr. Lewis, Dr. Gambrill indicated that the claimant could, *inter alia*, understand, remember, and carry out simple instructions, make simple work-related decisions, respond appropriately to supervision and coworkers, deal with changes in a routine work setting, and handle normal stress.  However, she indicated the claimant would not be able to maintain concentration and attention for extended periods in a routine work setting (Tr. 1493).  She noted she had treated the claimant for three or four months and that the claimant's symptoms included anxiety and forgetfulness, and that she appeared anxious during office visits (Tr. 1495).  She also indicated that the claimant's psychological conditions of depression and anxiety would affect the claimant's physical condition, and that the claimant's pain would occasionally (in contrast to Dr. Lewis's finding of frequently) interfere with her ability to attend and concentrate (Tr. 1496).  She also indicated that the claimant was capable of low stress jobs but was easily distracted with too much stress (Tr. 1496).

Originally, state reviewing physicians found that there was no medical evidence in the record to find a medically determinable mental impairment present (Tr. 70, 83).  On remand, state reviewing physicians found her mental impairments to be nonsevere, noting that they did not cause more than minimal limitation to her global functioning (Tr. 507, 538).

In his written opinion on remand, the ALJ summarized much of the evidence related to the claimant's mental impairments at step two, including a summary of the primary care treatment notes related to the claimant's anxiety and depression.  He found, however, that

-7-

they did not cause more than minimal limitation in her ability to work (Tr. 401). He summarized Dr. Ward's consultative findings, as well as more recent 2017-2018 treatment notes that indicate even when she reported poor control of anxiety, her medications were not usually adjusted. Additionally, he pointed out that she had been advised by her physician that she may not qualify for disability (Tr. 402). He noted the updated state reviewing physician findings, also concluding that the records where the claimant presented with normal mental status findings outweighed her "occasional complaints" (Tr. 403). He thus afforded great weight to the state reviewing physician opinions on remand as to the claimant's mental impairments (Tr. 403). At step four and after summarizing the claimant's hearing testimony, the ALJ summarized the evidence as it related to her physical impairments. Noting this Court's previous remand order, the ALJ went through a factor-by-factor examination with regard to Dr. Lewis's opinion, then afforded it only partial weight, finding it overstated the claimant's impairments in light of the entire record of evidence (Tr. 410-413). He then evaluated Dr. Gambrill's opinion, finding it to be internally inconsistent when it came to statements with regard to the claimant's ability to handle normal work stress, statements regarding the claimant's pain, and statements regarding the claimant's need for a cane. He further found that many of her statements were inconsistent with the longitudinal record of evidence, including her own treatment records, and thus afforded her opinion only partial weight (Tr. 414).

The claimant asserts that the ALJ erred in finding that she could return to her past relevant work as a collection clerk. As part of this argument, she contends that the ALJ failed to account for her nonsevere mental impairments, in contravention of his step-four

duty to make specific findings with regard to the physical and mental demands of past relevant work. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the ALJ erred at step four when he failed to account for the claimant's nonsevere impairments as he formulated the claimant's RFC. He made mention of medical records related to the claimant's depression and anxiety, as well as findings related to stress and

the ability to attend and concentrate; however, he only addressed them in pointing out inconsistences. Where there were consistencies, particularly with regard to concerns regarding her ability to maintain attention and concentration (*among others*), the ALJ acknowledges them but does not apply them to the RFC analysis. Furthermore, the ALJ failed to consider the "cumulative effect of claimant's impairments" at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Particularly applicable to her anxiety and depression, the Tenth Circuit has held that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v. Colvin*, 727 F.3d 1061, 1068-1069 (10th Cir. 2013) ("To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis."). This is of specific concern where, as here, there are multiple treatment records indicating that the claimant's nonsevere mental impairments, along with her severe impairment of, *inter alia*, chronic pain, may have had a combined effect in her ability to function. *See Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) ("The ALJ's step-two finding [of the severe impairment of chronic back pain] makes it impossible to conclude at step four that her pain was insignificant][.]").

Because the ALJ failed to properly evaluate *all* the claimant's impairments and the opinion evidence of record, the decision of the Commissioner should therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 2nd day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**